OPINION
 

 POLLAK, District Judge.
 

 This appeal from the Bankruptcy Appellate Panel (BAP) presents challenges to sanctions imposed by the Northern District of California, San Francisco Division, of the bankruptcy court on appellants Arlo Hale Smith and Daniel Miller. The sanctions — which were largely sustained by the BAP — were based on appellants’ misconduct in improperly invoking the processes of the bankruptcy court to block the progress of a state court civil action in which Smith was counsel for the defendants, one of whom was Miller. The obstructionist techniques employed by Smith and Miller involved a series of bankruptcy filings and concurrent removal petitions from the state court to the bankruptcy court on behalf of certain of the state-court defendants — each removal delaying trial in the state court until the granting of a remand petition.
 

 On appeal, Smith and Miller challenge the procedures followed by the bankruptcy court in imposing sanctions. They do not take serious issue with the bankruptcy court’s findings of misconduct.
 

 FACTS AND PROCEEDINGS IN THE BANKRUPTCY COURT
 

 The opinion of the BAP describes the preposterous misconduct of Smith and Miller and the proceedings in the bankruptcy court in meticulous detail. Rather than undertaking to restate that carefully crafted narrative, we simply refer the reader to it.
 
 Miller v. Cardinale (In re
 
 Deville), 280 B.R. 483, 486-87 (9th Cir. BAP 2002). We find it accurate in all respects.
 

 In response to the bankruptcy filings and attempts to remove the
 
 Cardinale
 
 suit from state court, the San Francisco bankruptcy court sua sponte issued two orders to show cause (one to Smith in the
 
 Deville
 
 and
 
 Daggett
 
 bankruptcies, and a second to Smith and Miller in the
 
 Miller
 
 bankruptcy).
 

 After a hearing on the OSCs, the bankruptcy court concluded that
 

 Smith orchestrated the serial bankruptcy filings and removals of the Action by the defendants one by one, and ... those actions were spread out so as to maximize the delay, cost and harassment to plaintiff.
 
 *542
 
 Smith’s removals in the DeVille and Daggett bankruptcies, his participation in Miller’s second removal in the Dag-gett bankruptcy, his intentional misstatements on Miller’s bankruptcy petition, and his orchestration of serial bankruptcy filings and removals by the defendants were all part of a scheme to cause unnecessary delay, harass plaintiff and needlessly increase plaintiffs litigation costs.
 

 Mem. Decision, Dec. 27, 2000 at 19-20.
 

 Turning to Miller’s behavior, the bankruptcy court found that Miller was significantly more than an innocent actor in the bankruptcy filing and the efforts to remove the
 
 Cardinale
 
 suit.
 
 Id.
 
 at 21-22. The court reviewed Miller’s attempt to remove Cardinale’s suit to Daggett’s bankruptcy case and indicated that his actions were taken without any legitimate purpose beyond stalling the litigation. Id. at 22. The court ruled that, while Smith was the “driving force,” Miller was a “knowing participant” in a “larger scheme of serial bankruptcies and removals by the defendants, one by one, all designed to cause unnecessary delay, needlessly increase plaintiffs litigation costs, and harass plaintiff.” Id.
 

 The bankruptcy court’s discussion of sanctions contemplated that an award to Cardinale of additional attorney’s fees incurred by Cardinale in consequence of the misconduct would be an appropriate initial step. Id. at 23. The court took as its point of departure the declaration by Thomas Eastridge, Cardinale’s attorney, accompanying Cardinale’s July 26, 2000 revised second remand motion, which reported that Cardinale had to that date been required by the complained-of misconduct to expend an additional $12,201.75 in attorney’s fees. Id. at 6. The court reduced that figure to $5,548.50.
 
 Id.
 
 at 27. But the court reasoned that limiting the sanctions to an award of the expenses actually incurred by Cardinale would not be a sufficient deterrent:
 

 [I]f awarding attorneys’ fees were the only sanction it would likely cost Smith client’s [sic] substantially less than defending themselves at trial. Therefore, absent a greater sanction there is a danger that Smith’s tactics would appear to be a cost-effective means to delay or avoid trial.
 

 Id.
 
 at 20. Thus, the court’s December 27, 2000 memorandum decision provided as follows:
 

 [T]his court will award a total of 24.76 hours, at $225 per hour, for a subtotal of $5,548.50 in attorneys’ fees against Smith. This court will award additional sanctions against Smith equal to 200% of that amount, or $11,097.00, for a total of $16,645.50. Miller will be jointly and severally liable with Smith for all of the base amount of attorneys’ fees and another 100% of that amount, for a total of $11,097.00.
 

 Id.
 
 at 27.
 

 Pursuant to the bankruptcy court’s instructions, Thomas Eastridge, on Cardi-nale’s behalf, filed a supplemental declaration for expenses incurred subsequent to his July 26, 2000 declaration. The supplemental declaration reported $15,772.50 in additional fees and $1,880.95 in costs. Supp. Mem., Apr. 2, 2001 at 2. The court, in an April 2, 2001 supplemental memorandum decision, accepted Eastridge’s costs figure, but scaled the fees back to $12,500:
 

 Smith and Miller shall be liable for the entire base amount of plaintiffs additional fees and costs, for a sub-total of $14,380.95 ($12,500 -1- $1,880.95), plus the previously-awarded joint and several sanctions of $11,097.00 for a total award of $25,477.95 against Smith and Miller, jointly and severally.
 

 
 *543
 
 In addition, as against Smith only, the court will award an additional amount by applying a multiplier of 100% to plaintiffs additional fees, for an additional sub-total of $12,500.00, plus the previously-awarded sanctions of $5,548.50 against Smith only, for a total of $18,548.50.
 
 [1]
 

 Id.
 
 at 5.
 

 Taken together, the bankruptcy court’s memorandum decisions of December 27, 2000 and April 2, 2001 brought about the following results:
 

 Smith & Smith’s
 

 Miller’s Additional
 

 Joint Individual
 

 Liability Liability
 

 December 27, 2000: $11,097.00 $ 5,548.50
 

 April 2, 2001: $14,380.95 $12,500.00
 

 $25,477.95 $18,048.50
 

 Thus Smith’s aggregate liability came to $43,526.45 (the sum of $25,477.95 and $18,048.50), and of that sum Miller was jointly liable for $25,477.95. All of the sums awarded were to be paid to Cardi-nale. Of the aggregate figure of $43,526.45, $19,929.45 represented what the bankruptcy court calculated was proper compensation to Cardinale for her reasonable attorney’s fees and costs ($5,548.50 for the first compensatory award, plus $14,380.95 for the supplementary compensatory award=$19,929.45), and the balance of $23,597.00 constituted what the bankruptcy court deemed a proper deterrent sanction.
 

 In its April 2, 2001 supplemental memorandum decision, the bankruptcy court cited three sources of authority for the sanctions imposed:
 
 first,
 
 Federal Rule of Bankruptcy Procedure 9011;
 
 second,
 
 the court’s inherent authority; and,
 
 third,
 
 28 U.S.C. § 1927.
 
 [2]
 

 Id.
 
 at 3-4. The court found that Smith and Miller “acted with subjective bad faith.”
 
 Id.
 
 at 4. The sanction, the court stated, was not “punitive,” but was instead “intended to compensate plaintiff and to deter Smith and Miller from continuing their pattern of misconduct.”
 
 Id.
 
 at 5 n. 2. Smith and Miller then appealed to the BAP.
 

 The Bankruptcy Appellate Panel Decision
 

 The BAP first addressed the question of whether the bankruptcy court’s award to Cardinale was a proper exercise of the court’s authority under Bankruptcy Rule 9011. Rule 9011(b) imposes on attorneys, and also on unrepresented parties, the obligation to insure that all submissions to a bankruptcy court are truthful and for proper litigation purposes. Of particular pertinence to the case at bar is Rule 9011(b)(1):
 

 (b) Representations to the court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person’s knowledge, in
 
 *544
 
 formation, and belief, formed after an inquiry reasonable under the circumstances,—
 

 (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation
 

 Rule 9011(c) invests a bankruptcy court with authority to impose sanctions on persons who violate Rule 9011(b):
 

 (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
 

 (1) How initiated.
 

 (A) By motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b)....
 

 (B) On court’s initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.
 

 (2) Nature of sanction; limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys’ fees and other expenses incurred as a direct result of the violation.
 

 The BAP found that the bankruptcy court’s order making an award to Cardi-nale was not in conformity with Rule 9011(c)(2). As the text of the Rule makes clear, an award to an adverse party “of reasonable attorneys’ fees and other expenses” can only be made pursuant to a “motion” by that party. The bankruptcy court had treated, as the requisite “motion,” the initial declaration of Eastridge on July 26, 2000, reciting the expenditure by his client Cardinale of $12,201.75 (reduced by the bankruptcy court to $5,548.50) in attorney’s fees in consequence of the asserted misconduct. But the BAP concluded that the Eastridge declaration did not constitute a “motion” within the meaning of the Rule. Accordingly, the BAP ruled that, since the bankruptcy court had ordered that the award be paid to Cardinale, Rule 9011 was not adequate support for the award.
 

 The BAP then turned its attention to the bankruptcy court’s invocation of its inherent power as an alternate authority for the compensatory award of attorney’s fees and costs.
 
 Deville,
 
 280 B.R. at 494. In addressing the proper exercise of inherent power, the BAP considered the Supreme Court’s discussion of inherent power in
 
 Chambers v. NASCO,
 
 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). In
 
 Chambers
 
 the Court “explored] the scope of the inherent power of a federal court to sanction a litigant for bad-faith conduct.”
 
 Id.
 
 at 35, 111 S.Ct. 2123. The
 
 Chambers
 
 Court observed that:
 

 [A] court may assess attorney’s fees when a party has “ ‘acted in bad faith, vexatiously, wantonly, or for oppressive reasons.’ ”
 
 Alyeska [Pipeline Serv. Co. v. Wilderness Soc’y,
 
 421 U.S. 240,] 258-259, 95 S.Ct. 1612, 44 L.Ed.2d 141 [(1975)] (quoting
 
 F.D. Rich Co. v. United
 
 
 *545
 

 States ex rel. Industrial Lumber Co.,
 
 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974)). See also
 
 Hall v. Cole,
 
 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973);
 
 Newman v. Piggie Park Enterprises, Inc.,
 
 390 U.S. 400, 402, n. 4, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam). In this regard, if a court finds “that fraud has been practiced upon it, or that the very temple of justice has been defiled,” it may assess attorney’s fees against the responsible party,
 
 Universal Oil [Products Co. v. Root Refining Co.,
 
 328 U.S. 575,] 580, 66 S.Ct. 1176, 90 L.Ed. 1447 [(1946)], as it may when a party “shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order,”
 
 Hutto [v. Finney,
 
 437 U.S. 678,] 689, n. 14, 98 S.Ct. 2565, 57 L.Ed.2d 522 [(1978)]. The imposition of sanctions in this instance transcends a court’s equitable power concerning relations between the parties and reaches a court’s inherent power to police itself, thus serving the dual purpose of “vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent’s obstinacy.”
 
 Ibid.
 

 Id.
 
 at 45^46, 111 S.Ct. 2123 (footnote omitted).
 

 The
 
 Chambers
 
 Court was at pains to point out that the fact that certain statutes and rules of procedure authorize the imposition of sanctions does not foreclose a court’s invocation of its inherent sanctioning authority when that appears to be the better instrument:
 

 There is ... nothing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney’s fees as a sanction for bad-faith conduct. This is plainly the case where the conduct at issue is not covered by one of the other sanctioning provisions. But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules. A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees, see
 
 Roadway Express
 
 [,
 
 Inc. v. Piper,
 
 447 U.S. 752,] 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 [(1980)]. Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.
 

 Id.
 
 at 50, 111 S.Ct. 2123.
 

 Based on
 
 Chambers,
 
 the BAP came to the following conclusions with respect to the bankruptcy court’s invocation of its inherent power as support for the sanctions imposed:
 

 First:
 
 The BAP found that the situation confronting the bankruptcy court was not one in which statutes or rules sufficed to support the compensatory portion of the sanction — i.e., the $19,929.50 reimbursing Cardinale for attorney’s fees and costs:
 

 This is a situation in which neither a statute nor the rules of procedure are “up to the task.” Federal Rule of Bankruptcy Procedure 9011 does not suffice because the victim did not make the requisite motion following compliance with the mandatory “safe harbor” and because the court may not shift attor
 
 *546
 
 neys’ fees and costs on its own motion. Fed. R. Bankr.P. 9011(c).
 

 Likewise, 28 U.S.C. § 1927 does not suffice because the Ninth Circuit does not regard a bankruptcy court as a “court of the United States.” 28 U.S.C. § 1927;
 
 Perroton v. Gray (In re Perroton),
 
 958 F.2d 889, 896 (9th Cir.1992);
 
 Determan v. Sandoval (In re Sandoval
 
 ), 186 B.R. 490, 495-96 (9th Cir. BAP 1995).
 

 28 U.S.C. § 1447(c)
 
 [3]
 
 allows a court discretion to grant attorneys’ fees and costs for an improper removal. The sanction is applicable to bankruptcy removals, but must be tied to specific removals, by virtue of the language “incurred as a result of the removal.” 28 U.S.C. § 1447(c);
 
 Billington v. Winograde (In re Hotel Mt. Lassen, Inc.),
 
 207 B.R. 935, 939 (Bankr.E.D.Cal.1997). On the present record this provision, while applicable, may be of limited utility.... In order for § 1447(c) to be utilized here, the bankruptcy court would need to make further findings that apply the statutory standard of “incurred as a result of the removal” and tie each dollar of the compensatory award to a removal, applying, a removal-by-removal analysis. Such an exercise is simply unnecessary in light of the court’s inherent power to assess compensatory sanctions.
 

 Deville,
 
 280 B.R. at 494-95.
 

 Second:
 
 Having concluded that the bankruptcy court could properly invoke its inherent power as a basis for imposing a compensatory sanction, the BAP then determined that the bankruptcy court’s exercise of its inherent power comported with the requirements of due process:
 

 Here, the OSCs described how Appellants conspired in unreasonably multiplying the proceedings, both in state court and bankruptcy court, by filing serial bankruptcy petitions and removal papers in violation of prior court orders. They also specifically addressed lack of good faith and Appellants’ manipulation of the bankruptcy system to frustrate the state court trial. Appellants were also given the opportunity to respond in writing, and to appear and testify at a hearing.
 

 This notice satisfied due process, and placed Appellants on notice that the court’s inherent authority was implicated. Such notice enabled Appellants to prepare to defend against the assertion of conspiracy to abuse the judicial and bankruptcy process.
 

 Id.
 
 at 497.
 

 Third:
 
 The BAP concluded that the portion of the sanction that went beyond reimbursing Cardinale for her expenses — i.e., the $23,597.00 deterrent aspect of the award — could not be sustained as an exercise of the bankruptcy court’s inherent power. “It is apparent from
 
 Chambers,”
 
 said the BAP, “that ‘inherent authority’ will not suffice to support such a ‘penalty’
 
 *547
 
 in this instance. The award in
 
 Chambers
 
 was purely compensatory. The context of the
 
 Chambers
 
 rationale is that ‘inherent power’ is not a manifestation of contempt power and may be determined without resort to contempt proceedings so long as the sanctions are compensatory.” 280 B.R. at 497.
 

 Having determined that the bankruptcy court’s invocation of inherent power could only sustain the $19,929.50 compensatory portion of its sanctioning award, the BAP then turned again to Rule 9011 to determine whether the Rule provided proper support for the $23,597.00 deterrent portion of the award. The BAP observed that “[a] bankruptcy court is expressly authorized by rule to impose a ‘penalty’ that is ‘limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.’ Fed. R. Bankr.P. 9011(c)(2). Nor must such Rule 9011(e)(2)’penalty’ be awarded through contempt proceedings.”
 
 Id.
 
 at 498. Further, the BAP concluded that “the additional sanction was not excessive, when viewed in relation to the costs to Cardinale and to the court for needless litigation,” and, “[i]n addition, the sanction was appropriate to deter Appellants’ scheme to circumvent court orders, deprive the proper division ... of the bankruptcy court of its jurisdiction, and abuse the bankruptcy process, all for the wrongful purpose of impeding a state court action and harassing a plaintiff.”
 
 Id.
 
 “Thus,” the BAP stated, “the penalty was authorized and was appropriate in amount. But for one blemish, the ‘penalty’ would be eligible to be affirmed. The blemish is that the Rule 9011(c)(2) ‘penalty’ must be paid ‘into court.’ Here the penalty was ordered paid to Cardinale and thus cannot stand as a Rule 9011(c)(2) penalty.”
 
 Id.
 
 Accordingly the BAP reversed the “additional $23,597 penalty” and “REMAND[ED] this portion of the sanction award in order that the bankruptcy court may decide if it will order this ‘penalty’ to be paid into the court.”
 
 Id.
 

 In sum, the BAP affirmed the bankruptcy court’s compensatory sanction reimbursing Cardinale for reasonable attorney’s fees and costs totaling $19,929.45, ruling that the compensatory sanction was “a proper exercise of the bankruptcy court’s inherent authority, and complied with due process requirements.”
 
 Id.
 
 But the BAP set aside the $23,597.00 penalty because it was improperly awarded to Car-dinale rather than to the court, remanding this aspect of the award for further consideration by the bankruptcy court. Smith and Miller then appealed. This court has jurisdiction of appeals from all “final decisions, judgments, orders and decrees” of the BAP. 28 U.S.C. § 158(d).
 

 STANDARD OF REVIEW
 

 This court independently reviews the bankruptcy court’s rulings on appeal from the BAP.
 
 See Havelock v. Taxel (In re
 
 Pace), 67 F.3d 187, 191 (9th Cir.1995). “Because we are in as good a position as the BAP to review bankruptcy court rulings, we independently examine the bankruptcy court’s decision, reviewing the bankruptcy court’s interpretation of the Bankruptcy Code de novo and its factual findings for clear error.”
 
 United States v. Hatton (In re
 
 Hatton), 220 F.3d 1057, 1059 (9th Cir.2000). This court reviews an award of sanctions for an abuse of discretion.
 
 See Caldwell v. Unified Capital Corp. (In re Rainbow
 
 Magazine), 77 F.3d 278, 283 (9th Cir.1996) (reviewing sanctions imposed under Bankr.Rule 9011 and the bankruptcy court’s inherent power to sanction).
 

 DISCUSSION
 

 On appeal, Smith and Miller raise three contentions, which we will address seria-
 
 *548
 
 tim. First, Smith and Miller argue that they were not afforded sufficient notice, comporting with due process, of either the particular sources of sanctioning authority relied on by the bankruptcy court, or the particular conduct they allegedly engaged in that was charged as sanctionable. Second, appellants contend that the existence of statutory provisions supporting sanctions limited the bankruptcy court’s authority to impose sanctions via its inherent power. Finally, appellants assert that they should have been afforded the protections which attach in contempt proceedings, given the bankruptcy court’s imposition of a “penalty” geared to purposes of deterrence rather than compensation.
 

 I. Due Process
 

 Smith and Miller argue that the bankruptcy court failed to afford them notice of the particular sources of sanctioning authority, as required by due process. They point out that the bankruptcy court cited Rule 9011 as the ground for imposing sanctions in its OSCs, but later referred to its inherent power in its supplemental memorandum decision. Smith and Miller also argue that the bankruptcy court did not sufficiently inform them of what alleged conduct was charged as warranting sanctions. In advancing each of these arguments, Smith and Miller contend that they were denied due process of law.
 

 Ordinarily a court proposing to impose sanctions notifies the person charged both of the particular alleged misconduct and of the particular disciplinary authority under which the court is planning to proceed. A court’s failure to give notice of an intent to exercise inherent power may, therefore, invalidate the sanctions imposed.
 
 See Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.,
 
 174 F.3d 87 (2d Cir.1999). But the requirement is not an absolute one. In
 
 Fellheimer, Fichen & Braverman v. Charter Technologies,
 
 57 F.3d 1215 (3d Cir.1995), the Third Circuit addressed a situation in which the bankruptcy court had sanctioned a law firm, invoking Rule 11 of the Federal Rules of Civil Procedure and Bankruptcy Rule 9011 as the authority for its action. On appeal, the district court concluded that neither of the two Rules, as then written, authorized sanctions not only of the lawyer who signed an offending pleading but of the lawyer’s firm as well. However, the district court sustained the sanction as a proper exercise of the bankruptcy court’s inherent power. The Third Circuit affirmed, explaining its ruling in language that warrants extended quotation:
 

 The key to FE & B’s due process claim is the distinction between Rule 11 sanctions and inherent power sanctions — if these sanctions were identical in all respects, particularized notice as to one sanction would arguably suffice to fully inform FE & B as to the pendency of the other sanction. Rule 11 sanctions and inherent power sanctions do, of course, differ markedly in at least one aspect pertinent to this case: Invocation of a federal court’s inherent power to sanction requires a finding of bad faith.
 
 Chambers,
 
 501 U.S. at 49, 111 S.Ct. 2123;
 
 Landon v. Hunt,
 
 938 F.2d 450, 454 (3d Cir.1991). The imposition of Rule 11 sanctions, on the other hand, requires only a showing of objectively unreasonable conduct. E.g.,
 
 Lony v. E.I. Du Pont de Nemours & Co.,
 
 935 F.2d 604, 616 (3d Cir.1991).
 

 We have previously held that “prior to sanctioning an attorney, a court must provide the party to be sanctioned with notice of and some opportunity to respond to the charges” in order to satisfy the requirements of due process.
 
 Jones v. Pittsburgh Nat’l Corp.,
 
 899 F.2d 1350, 1357 (3d Cir.1990) (citations omitted).
 
 *549
 
 Moreover, we have stated that “we think particularized notice is required to comport with due process.”
 
 Id.
 
 (citation omitted). FE & B has raised a fairly significant argument here as the bankruptcy court never indicated that it was acting under its inherent sanction power in this case. Indeed, neither the motion for sanctions nor the bankruptcy court ever mentioned any ground for sanctions other than Rule 11 and Bankruptcy Rule 9011. As discussed above, it was the district court that first justified the bankruptcy court’s conduct on the ground of the inherent power to sanction. Nonetheless, we agree with the district court’s reasoning and we likewise find that justifying the bankruptcy court’s conduct on that ground does not violate FE & B’s right to due process on the record of this case.
 

 [O]ur holding is a narrow one, compelled by our finding that FE & B was provided with sufficient, advance notice of exactly which conduct was alleged to be sanctionable and, furthermore, that FE & B was aware that it stood accused of having acted in bad faith.
 

 Id.
 
 at 1225.
 

 Agreeing with the approach taken by the Third Circuit in
 
 Fellheimer,
 
 we think that whether the bankruptcy court’s inherent power can support the attorney’s fees and costs portion of the sanction imposed on Smith and Miller depends on whether Smith and Miller were, like the Fellheimer law firm, “provided with sufficient, advance notice of exactly which conduct was alleged to be sanctionable and, furthermore ... [were] aware that [they] stood accused of having acted in bad faith.”
 

 To answer that question we turn again to the bankruptcy court’s OSCs of July 21, 2000 and August 29, 2000.
 

 The first OSC focused on Smith’s conduct. The bankruptcy court stated its belief that Smith “was engaging in a pattern of manipulation of the bankruptcy system in order to frustrate prosecution of the state court action initiated by plaintiff.” The court also stated:
 

 [T]here does not appear to be a good faith purpose for the removal since Mr. DeVille’s filing resulted in an automatic stay under 11 U.S.C. § 362(a) that protected him. Why would a protected debtor/defendant need to remove an action to the bankruptcy court when the plaintiff would be required to file a proof of claim here? Where is the jurisdiction of this court over the action against non-debtor defendants? Mr. Smith apparently wishes to use Mr. De-Ville’s Chapter 13 case to protect the other defendants he represents in this case by frustrating the repeated efforts of the Contra Cost[a] Superior Court to bring this matter to trial.
 

 The second OSC, which discussed the conduct of both Smith and Miller, described their ongoing relationship and stated:
 

 From the foregoing history of complicity the court infers (and is prepared to find) that Mr. Miller was well aware of the following: Judge Jellen’s prior remand of the state court action from the Oakland Division; this court’s July 28 instructions to Mr. Smith that he should not file any further removal petitions without prior court approval; Mr. Daggett’s dismissal from the state court action; and the fact that the court has under submission sanctions to be imposed against Mr. Smith for his conduct in the prior removal of the state court action to this division.
 

 Unless Mr. Smith and Mr. Miller file declarations under penalty of perjury establishing that [Mr. Miller was un
 
 *550
 
 aware of the prior remand of the Dag-gett bankruptcy and of this court’s prohibitions against any further removals, and that Mr. Smith neither aided against any further removals, and that Mr. Smith neither aided Mr. Miller in removal nor informed him of this court’s instructions], the court will find that Mr. Smith and Mr. Miller have engaged in a conspiracy to hinder, delay and frustrate plaintiffs efforts, and will issue appropriate sanctions already being considered against Mr. Smith.
 

 OSC, August 29, 2000 at 3-4.
 

 We think the two OSCs establish that Smith and Miller were fully advised of the conduct charged against them and of the fact that the bankruptcy court deemed the charged conduct to have been pursued in bad faith. Accordingly, we conclude that the bankruptcy court’s failure to specify, in advance of the disciplinary proceedings, that its inherent power was a basis for those proceedings, did not serve to undercut its sanctioning authority.
 
 [4]
 

 Smith and Miller further argue that the OSCs failed to apprise them of the entirety of the conduct alleged by the bankruptcy court to be sanctionable. In particular, Smith and Miller find fault with the court’s memorandum decision awarding sanctions. The memorandum decision discussed Miller’s own bankruptcy petition which was filed after the second OSC was issued. Smith and Miller contend that they were not on notice that any conduct following the second OSC was being considered as sanctionable behavior.
 

 As noted above, the second OSC reviewed the efforts of both Smith and Miller to manipulate the bankruptcy system in order to impede Cardinale’s state court action. Miller’s subsequent bankruptcy filing was a continuation of the manipulative behavior in which Smith and Miller had previously engaged. And that bankruptcy filing was the subject of extensive consideration at the hearing on the second OSC — a hearing which began over three weeks after Miller filed for bankruptcy, and was continued until four weeks after that. Smith and Miller clearly had adequate opportunity to explain Miller’s filing of a bankruptcy petition despite the orders to show cause.
 

 II. Federal Rule of Civil Procedure 11, Federal Rule of Bankruptcy Procedure 9011, and the Inherent Power to Sanction Misconduct
 

 Smith and Miller argue that the existence of Rule llof the Federal Rules of Civil Procedure and its bankruptcy twin, Rule 9011,
 
 [5]
 
 severely limited the court’s authority to impose sanctions via its inher
 
 *551
 
 ent power. In discussing the foundation of a federal court’s inherent power, the Supreme Court has emphatically rejected the notion that the advent of 28 U.S.C. § 1927
 
 [6]
 
 and the sanctioning provisions in the Federal Rules of Civil Procedure displaced the inherent power to impose sanctions for bad faith conduct.
 
 See Chambers,
 
 501 U.S. at 49-50, 111 S.Ct. 2123 (holding that a court “may safely rely on its inherent power” as a sanctioning tool in instances when statutes or rules prove inadequate to remedy misconduct). We agree with the BAP’s conclusion that, given the inadequacy of rules and statutes to sanction Smith and Miller’s misconduct, the bankruptcy court correctly relied upon its inherent power as a sanctioning tool.
 

 III. In Imposing a “Penalty” Should the Bankruptcy Court Have Utilized the Procedures Applicable in a Criminal Contempt Proceeding?
 

 As noted above, the BAP found the larger portion of the sanction — the $23,597.00 “penalty” imposed as a deterrence — warranted by appellants’ misconduct and appropriate in amount, but flawed because it was directed to be paid to Cardinale rather than “into court.” For that reason, the BAP set the $23,597.00 award aside and remanded the case to the bankruptcy court for consideration by that court of whether the award should be revived as a payment to the court.
 

 On appeal, Smith and Miller argue that the award cannot, in any event, be revived because, as a “penalty,” it could only properly be imposed pursuant to procedures comporting with those called for in a criminal contempt proceeding. The argument would have some merit if the BAP had ruled that the bankruptcy court had been operating under its inherent power with respect to that portion of its sanction.
 
 See F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.,
 
 244 F.3d 1128, 1139 (9th Cir.2001). But, under the BAP’s analysis, Rule 9011(c)(2) was the source of the deterrence portion of the bankruptcy court’s award. Rule 9011(c)(2) expressly contemplates “an order to pay a penalty into court” as one of the forms of order which may be utilized “to deter repetition of such conduct or comparable conduct by others similarly situated.” The BAP ruled that “such Rule 9011(c)(2) ‘penalty’ [need not] be awarded through contempt proceedings.” The question now to be addressed is whether the BAP’s construction of Rule 9011(c)(2) was correct.
 

 In construing Rule 9011(c), the current wording of which dates from 1997 and is set forth in the margin, we note at the outset that its language is a nearly verbatim counterpart of Federal Rule of Civil Procedure 11(c), the current wording of which dates from 1993.
 
 [7]
 
 Moreover, former
 
 *552
 
 Rule 9011 and former Rule 11 were also virtually identical.
 
 Compare
 
 Fed.R.Civ.P. 11 (1990)
 
 with
 
 Fed. R. Bankr.P. 9011 (1990). Unsurprisingly, courts construing former Rule 9011 were accustomed to rely on former Rule 11 precedents.
 
 Valley Nat’l Bank v. Needler (In re Grantham Bros.),
 
 922 F.2d 1438, 1441 (9th Cir.1991). And when Rule 9011 was cast in its present form in 1997, the drafters of the amended bankruptcy rules referred readers to the notes accompanying the 1993 amendments of Rule 11.
 
 [8]
 

 Prior to the 1993 amendments to Rule 11, two of our sister circuits contemplated and rejected the necessity of criminal contempt protections in Rule 11 proceedings.
 
 See Eisenberg v. Univ. of New Mexico,
 
 936 F.2d 1131, 1137 (10th Cir.1991);
 
 Donaldson v. Clark,
 
 819 F.2d 1651, 1558 (11th Cir.1987) (“Nothing in the text of Rule 11 or in the Advisory Committee Note indicates that due process requires a court to follow the procedures called for by Fed.R.Crim.P. 42(b) for criminal contempt proceedings before it can impose a monetary sanction pursuant to Rule 11.”). Our jurisprudence was in harmony with these rulings. In
 
 Hudson v. Moore Business Forms, Inc.,
 
 898 F.2d 684, 686 (9th Cir.1990), a case arising under pre 1993 Rule 11, we considered the procedural requirements attendant on a proceeding imposing sanctions designed to deter further misconduct. We concluded that the respondent in such a proceeding was entitled to “notice and an opportunity to respond.”
 
 Id.; see also Tom Growney Equip., Inc. v. Shelley Irrigation Dev., Inc.,
 
 834 F.2d 833, 836 (9th Cir.1987).
 

 The 1993 amendments to Rule 11 established detailed provisions describing the appropriate procedures to be followed when sanctions are to be imposed for misconduct. Fed.R.Civ.P. 11(c); 2 James Wm. Moore et al., Moore’s Federal Practice § 11 App. 04[1] (3d ed.2003). Rule 9011 was amended in 1997 to conform to the changes wrought by the 1993 amendments tó Rule 11. Fed. R. Bankr.P. 9011 advisory committee note (1997). Subsequent to the amendments to Rule 11 and Rule 9011, we have continued to adhere to the practice that precedents interpreting Rule 11 may prove a helpful guide to our interpretation of Rule 9011.
 
 See Marsch v. Marsch (In re Marsch),
 
 36 F.3d 825, 829 (9th Cir.1994);
 
 see also
 
 10 Collier on Bankruptcy ¶ 9011.02 (15th ed.rev.2003). This practice leads us to look to the Advisory Committee Notes to the 1993 Amendments to Rule 11 to inform our judgment about the procedures required in imposing sanctions under Rule 9011 as it currently reads.
 

 The 1993 notes provide controlling insight into current Rule 11 and current Rule 9011, foreclosing the contention that the drafters of either rule were contemplating a criminal process: “Explicit provision is made for litigants to be provided notice of the alleged violation and an opportunity to respond before sanctions are imposed. Whether the matter should be decided solely on the basis of written
 
 *553
 
 submissions or should be scheduled for oral argument (or, indeed, for evidentiary presentation) will depend on the circumstances.” Fed.R.Civ.P. 11 advisory committee note (1993);
 
 see
 
 10 Collier on Bankruptcy ¶ 9011.06 (15th ed. rev.2003) (“Rule 9011(c)(1)(A) requires that a party or an attorney be given a ‘reasonable opportunity to respond’ to the alleged violation prior to imposition of sanctions. However, Rule 9011 does not require a formal hearing or a jury trial.”) (footnotes omitted). The notes also detail the court’s role as a sanctioning authority and the central purpose of sanctions: “The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons.” Fed.R.Civ.P. 11 advisory committee note (1993). It is clear that the rulemakers did not have in mind the criminal contempt process envisioned by Smith and Miller.
 
 [9]
 

 CONCLUSION
 

 For the foregoing reasons, the judgment of the BAP is AFFIRMED.
 

 [1]
 

 . "18,548.50” is either an arithmetic or typographical error. The figure the bankruptcy court manifestly intended was the sum of $12,500.00 and $5,548.50 — namely $18,048.50.
 

 [2]
 

 . 28 U.S.C. § 1927 reads:
 

 § 1927. Counsel's liability for excessive costs
 

 Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.
 

 It is aimed at "penalizing conduct that unreasonably and vexatiously multiplies the proceedings....”
 
 Fink v. Gomez,
 
 239 F.3d 989, 991 (9th Cir.2001).
 

 [3]
 

 . Although the bankruptcy court did not rely on 28 U.S.C. § 1447(c) in support of its award, the BAP chose to discuss it as an example of a statute that did not “afford a straightforward, comprehensive remedy” to Smith and Miller’s misconduct.
 
 Deville,
 
 280 B.R. at 495. Section 1447(c) states:
 

 (c) A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.
 

 [4]
 

 . Our holding should not be taken as an indication that this court regards a bankruptcy court's non-reference to inherent power as a source of sanctioning authority as a matter of little consequence. To the contrary, we subscribe to the Third Circuit's observations in
 
 Fellheimer:
 

 Ideally, there would have been some explicit indication here that the bankruptcy court was acting pursuant to its inherent sanction power. We refuse, however, to go along with FE & B’s argument and overturn the bankruptcy court’s decision merely because that court applied the wrong label to the righteous use of its inherent sanction power.
 
 See Brown v. Allen,
 
 344 U.S. 443, 459, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (citations omitted). We do not expect, however, that the result reached here will be often justified in future cases where the sanctioned party was not explicitly informed beforehand of the precise ground for the imposition of sanctions.
 

 57 F.3d at 1227.
 

 [5]
 

 . The language of Fed. R. Bank. P. 9011 parallels that of Fed.R.Civ.P. 11, so courts analyzing sanctions under Rule 9011 commonly rely on cases interpreting Rule 11.
 
 Valley Nat'l Bank
 
 v.
 
 Needier (In re Grantham Bros.),
 
 922 F.2d 1438, 1441 (9th Cir.1991).
 

 [6]
 

 .
 
 See supra
 
 note 2.
 

 [7]
 

 . The relevant portion of Rule 9011(c) reads:
 

 (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
 

 (1) How Initiated.
 

 (A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b)
 

 (B) On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.
 

 (2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter
 
 *552
 
 repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a non-monetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys’ fees and other expenses incurred as a direct result of the violation.
 

 The parallel portions of Rule 11 use identical language.
 

 [8]
 

 . The Advisory Committee Notes on the 1997 Amendments to Rule 9011 state: "For an explanation of these amendments, see the advisory committee note to the 1993 amendments to Fed.R.Civ.P. 11.”
 

 [9]
 

 . Smith and Miller urge the court to adopt the approach taken by
 
 Mackler Prods., Inc. v. Cohen,
 
 146 F.3d 126, 130 (2d Cir. 1998). The district court in
 
 Madder
 
 imposed a $10,000 sanction pursuant to its inherent power, explicitly labeling the sanction ''punitive.”
 
 Mackler Prods., Inc. v. Turtle Bay Apparel Corp.,
 
 1997 WL 269505, at *16 (S.D.N.Y. May 21, 1997). On appeal, the Second Circuit ruled that the district court erred in imposing a sanction of that magnitude without employing the procedural protections appropriate to a criminal case.
 
 Mackler,
 
 146 F.3d at 129-130. Upon remand and further appeal, the Second Circuit clarified its calculus of what procedural protections were necessary in imposing sanctions.
 
 Mackler Prods., Inc. v. Cohen,
 
 225 F.3d 136, 142 (2d Cir.2000). The procedural protections required by
 
 Madder,
 
 in an inherent power setting, turned on what the Second Circuit perceived to be the criminal character of the sanction at issue — a sanction characterized by the district court as ''punitive,” not as a sanction aimed at deterrence.
 
 Id.
 
 As detailed above, the Rule 9011(c)(2) sanctions levied in this case were aimed at deterrence, not punishment.