**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TOM HALE,
                        *Appellant,*

            v.

U.S. TRUSTEE,

                        *Appellee.*

No. 06-35349

D.C. No.
CV-04-00289-EJL

OPINION

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Submitted November 8, 2007*
Seattle, Washington

Filed December 10, 2007

Before: William C. Canby, Jr., Susan P. Graber, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Graber

*The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).

16189

**COUNSEL**

Tom Hale, Shelly, Idaho, appellant in propria persona.

Gary L. McClendon, United States Department of Justice, Boise, Idaho, for the appellee.

**OPINION**

GRABER, Circuit Judge:

   Appellant Tom Hale assisted Debtors Eric and Selina Jones in filing a bankruptcy petition. The bankruptcy court found

that, in doing so, Hale failed to honor his legal and ethical obligations as their lawyer. The bankruptcy court denied Hale's motion requesting judicial recusal, denied his request for a jury trial on the reasonableness of his attorney fees, disgorged him of his attorney fees, and sanctioned him. The district court affirmed those rulings, and Hale timely appealed. On appeal, he raises only the attorney fees and sanction issues. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

Hale provided "PRE-FILING legal services" to Debtors pursuant to a signed disclosure agreement. For a $250 fee, he agreed to analyze Debtors' financial situation and prepare their bankruptcy petition and required exhibits, but disclaimed representing them at the meeting of creditors required under 11 U.S.C. § 341. In addition, the agreement specified that Hale's representation "d[id] not include the following services: Adversary proceedings, appeals, and/or conversions, non-dischargeability proceedings, or any other representation." Hale refers to this practice as providing "unbundled" legal services to "pro se" debtors.

In 2001, Debtors filed for bankruptcy pro se. Hale did not sign the petition. The bankruptcy petition listed the $250 fee paid to Hale and explained that the fee covered "preparation, assistance, pro se advice and counsel, pre-filing, to obtain discharge order, or confirmation of plan."

Shortly after Debtors filed their petition, the bankruptcy court ordered sua sponte that Hale account for the $250 fee. The order stated that "there is inadequate information in the record to allow the Court to determine whether amount received by Counsel is reasonable under the circumstances." The court requested an itemization of all services that Hale had rendered to Debtors, including "a detailed and specific description of each individual item of service rendered; the name of the individual who rendered each such service; the

date such service was rendered; and the time expended in rendering such service."

A few days later, the United States Trustee issued a notice of intent to seek sanctions against Hale for his failure to sign the petition. The notice alleged that this omission violated Federal Rule of Bankruptcy Procedure 9011(a).

Hale submitted an itemization, but the bankruptcy court ruled that the itemization was "incomplete and not fully in compliance" with its order. The court explained that the itemization "use[d] a generic description of services with no detail." The court ordered that Hale supplement his itemization within 15 days.

About three weeks after the expiration of that 15-day period, Hale submitted a 15-page supplemental itemization. For most of the 15 pages, he took issue with the bankruptcy court's inquiry into his fee. For example:

> This is not the first time that I have attempted to protect the debtors and myself from the judicial tyranny that flows from the chambers of a biased Judge.
>
> . . . .
>
> Judge Terry L. Myers has continued the tradition of Judge Pappas by ordering an accounting of more cases to determine subjectively if my legal services were worth $250.00 to the debtors. To provide the "necessary" legal services to debtors, needed to file a no asset Chapter 7 bankruptcy, an attorney must spend hours of his time, at an hourly rate of $125.00.

Hale then described each of the services rendered, but he did not provide "the name of the individual who rendered each such service."

The bankruptcy court ruled that Hale's supplemental itemization still was incomplete: "The Supplemental Itemization contains, at pp. 9-11, fifteen separate descriptions of services rendered, which are segregated by date and time. Counsel shall identify whether he personally performed each and every such service or whether some were performed by his staff and/or interns." The court required that Hale further supplement his itemization within 10 days.

Hale did not submit any additional itemizations. Instead, he filed a 28-page "Motion to Recuse, Vacate, and Amended [sic] Jury Trial Demand," wherein he accused Bankruptcy Judges Jim D. Pappas and Terry Myers of harboring bias against him and of casting the legal system into disrepute. He moved for recusal of Judge Myers and requested a jury trial on the issue of his $250 fee.

The bankruptcy court scheduled a hearing to examine Hale's compliance with its itemization orders. Hale then filed an 11-page "Motion to Recuse, Vacate Hearing, and Jury Trial Demand." The motion included six pages of unattributed hearsay accusations, in the form of stories and narratives, leveled at Judge Myers. Hale repeated his motion for Judge Myers to recuse himself, renewed his request for a jury trial on the issue of his $250 fee, and asked that the scheduled hearing be vacated. With regard to the latter, he argued that he was unable to attend the hearing because he was working as a professor and because Judge Myers should recuse himself.

The hearing remained on the docket as scheduled. Hale did not attend, and the bankruptcy court continued the matter for further briefing. The court gave the U.S. Trustee three weeks to respond to Hale's motions and gave Hale 10 days to respond to the U.S. Trustee's brief once filed. The U.S. Trustee filed a brief, but Hale did not file a reply.

Thereafter, the bankruptcy court published a Memorandum of Decision. *In re Jones*, No. 01-02853, 2002 WL 818275

(Bankr. D. Idaho Apr. 4, 2002). In it, the court denied Hale's motion for judicial recusal. *Id.* at *5. The court ruled that Hale had tendered only rumors, innuendos, and unsupported allegations in support of his motion, which are insufficient to warrant recusal under 28 U.S.C. § 455(a). *Jones*, 2002 WL 818275, at *4-5. The court also denied Hale's request for a jury trial, citing *In re Rheuban*, 121 B.R. 368 (Bankr. C.D. Cal. 1990), and *In re Rheuban*, 128 B.R. 551 (Bankr. C.D. Cal. 1991). *Jones*, 2002 WL 818275, at *6.

The bankruptcy court then scheduled a status conference to set a briefing schedule on the reasonableness of Hale's fee. On the morning the conference was to take place, Hale faxed the bankruptcy court a note: "Please accept my apology for not being able to attend the Status Conference scheduled for 3:00 p.m., today. I left class feeling extremely disoriented and I was forced to seek medical assistance." The bankruptcy court vacated the hearing and rescheduled the status conference for a date nearly three months later.[1] All parties attended the rescheduled conference, at which the court established a discovery time line and scheduled a hearing on Hale's fee.

The U.S. Trustee filed an amended motion for sanctions against Hale, stemming from his representation of Debtors. In its motion, the U.S. Trustee alleged that Hale failed to sign Debtors' bankruptcy petition in violation of Federal Rule of Bankruptcy Procedure 9011(a); failed to provide Debtors with legal representation covering the normal, ordinary, and fundamental aspects of their case; failed to obtain Debtors' informed consent to limit his representation of them; and failed to create accurate and complete documents for filing in Debtors' case. The U.S. Trustee asked that the bankruptcy court disgorge all attorney fees Debtors had paid to Hale, that Hale reimburse Debtors for all costs and expenses incurred in

---

[1]Even were Appellant's fax construed as a motion to vacate or continue the hearing, local rules require that such a motion be filed at least three days before the hearing. Bankr. D. Idaho R. 2002.2(f)(4).

connection with their bankruptcy case, and that the court order Hale to sign all bankruptcy petitions of future debtor-clients and represent them in all normal, ordinary, and fundamental aspects of their cases, including attendance at the 11 U.S.C. § 341 meeting of creditors. The motion argued that sanctions were authorized under 11 U.S.C. §§ 105(a), 307, and 329; Federal Rules of Bankruptcy Procedure 2016(b) and 9011; Idaho Rules of Professional Conduct 1.2(c) and 1.4(b); "and the inherent authority of the court to sanction bad faith conduct." The bankruptcy court scheduled the hearing on the motion for sanctions concurrent with the attorney fees hearing.

Next, the U.S. Trustee filed a notice of intent to call witnesses at the upcoming hearing. Two days before the hearing, Hale filed a "Motion to Dismiss, Response to Amended Motions, Request for Sanctions, Offer of Proof, and Renewed Request for a Jury Trial." In his motion, Hale wrote a four-page notice to Debtors in which he accused the bankruptcy court of impropriety and the Debtors' current counsel of incompetent and unethical behavior. He then renewed his motion for a jury trial and stated: "I will be in Salt Lake City, Utah on the day of this hearing and I intend to rest on the pleadings. My presence is not mandated or necessary to the adjudication of the issues, in my opinion."

The bankruptcy court held the hearing, as scheduled, on Hale's attorney fees in Debtors' bankruptcy case. Hale did not attend.

The bankruptcy court subsequently issued a second Memorandum of Decision. The court summarized that, at the hearing, Debtor Selina Jones testified that Hale never informed her or her husband about the § 341 meeting of creditors or his intention not to appear at the meeting. When Hale sent Debtors the disclosure agreement, he told them to read over the papers but did not mention the section of the disclosure that states that he would not appear at the meeting. She further

testified that she did not and does not understand what the term *pro se* means, and stated that it was never explained to her. She thought Hale was their attorney. . . . [She] unequivocally testified that the Debtors would not have filed bankruptcy through Hale had they understood that he would not be appearing or providing services after filing. They needed an attorney, thought they'd hired one, and expected to have the assistance of one.

In addition, "[s]omewhere between the filing of the petition and the scheduled § 341(a) meeting, the Debtors received another telephone call from Hale. He advised them that there was 'something wrong with the paperwork' and that the Debtors should dismiss their bankruptcy." Debtor Selina Jones "testified that Hale was quite firm on dismissing the case, but not at all clear on why it needed to be dismissed," nor did he offer to refund the fee paid by Debtors. Hale drafted a motion to dismiss "without any request, input or assistance from the Debtors." The telephone call and draft motion "scared" Debtors into hiring additional counsel, J. Bart Green.

Green met with Debtors the day before the scheduled § 341 meeting and agreed to appear with them at the meeting. "He found the Debtors confused over the entire process and without any material understanding of what they had signed or what awaited them. From these conversations, Mr. Green also determined that numerous errors existed in the Hale-generated documents, and that multiple amendments were required." For example, although Debtors had informed Hale about a residence and two apartment buildings that they owned in Pocatello, Idaho, the original petition did not disclose any real property.[2]

---

[2]In his supplemental itemization, Hale maintained to the district court that he provides low-cost "unbundled" legal services for no-asset bankruptcy filings, but Debtors in fact had assets.

The bankruptcy court then proceeded to the merits of the motions because Hale, a licensed lawyer, specifically represented in his motion two days before the hearing that he intended to rest on the pleadings and that his presence at the hearing was "not mandated or necessary," and because he never requested that the court continue or vacate the hearing.

The court summarily denied Hale's renewed motions for a jury trial and for judicial recusal because he had not raised any new arguments since the court's earlier decision denying the original motions. The court ruled that Hale violated Federal Rule of Bankruptcy Procedure 9011(a) when he failed to sign Debtors' bankruptcy petition, which he prepared. The court disgorged his $250 fee because he failed "to provide the Debtors with competent legal representation covering the normal, ordinary and fundamental aspects of the case," failed "to create adequate and complete documents for filing," and failed "to obtain the informed consent of his clients to the purported limitations on representation." The court sanctioned Hale $2,000 to encourage him to change his conduct, serve as a deterrent to others, and reimburse the U.S. Trustee for some of the fees and expenses that it incurred attempting to gain Hale's compliance with Rule 9011.

The court also imposed non-monetary sanctions. The court noted:

> Hale has in the past been required to, among other things, disgorge fees in several cases. *See, e.g.*, [*In re* ]*Castorena*, 270 B.R. [504,] 532 [(Bankr. D. Idaho 2001)] (in which $125.00 was ordered disgorged in each of 19 cases, for a total of $2,375.00). Neither the Court's prior decisions nor these economic consequences have had appreciable impact on subsequent conduct.
>
> . . . .

Hale continues to prepare a large number of chapter 7 petitions in this District. For example, a report generated by the Court's clerk shows that, in the 12 months immediately preceding this Decision . . . , Hale filed 226 cases.

A random review of some of Hale's more recently filed cases indicates that his overall approach remains the same.

Consequently, the bankruptcy court ruled:

Unable or unwilling to conform his conduct to the requirements established by the Court's prior decisions and rulings, and to the standards by which all other debtors' counsel in the District abide, Hale has earned specific restrictions, by express order, on his practice. . . .

Hale shall not file, nor shall he prepare or cause to be prepared for filing by a debtor, any bankruptcy petition unless Hale signs said petition.

Further, Hale shall not file, nor shall he assist a debtor as counsel in filing, any bankruptcy petition unless Hale commits to such debtor to meet the ethical and professional obligations of a debtor's attorney and provide the reasonable and necessary services required to properly represent a debtor in a bankruptcy case. The required professional obligations include Hale's appearance at § 341(a) meetings. Other obligations and services were described in *Castorena* . . . . Such a commitment must be reflected in a written engagement or representation agreement, which the debtor(s) and Hale must sign.

In sanctioning Hale, the bankruptcy court relied primarily on the sanction authority of Federal Rule of Bankruptcy Pro-

cedure 9011(c). But the court also stated that, "[t]o the extent the Rules are not up to the task the Court may also rely on its inherent powers." (Internal quotation marks omitted.)

Finally, the bankruptcy court denied the U.S. Trustee's motion that Hale be ordered to pay Debtors' damages and fees for replacement counsel. The court reasoned that Green's fees were not unreasonable given the nature of Debtors' case and could not, "in dissecting Mr. Green's bill, identify some portion that [wa]s so directly and proximately caused by Hale's conduct that it should be awarded as damages."

Hale timely appealed from the bankruptcy court's decision, and the case was transferred to the United States District Court for the District of Idaho. Before the district court, Hale argued that he did not violate Rule 9011(a), that the bankruptcy court improperly disgorged his attorney fees and imposed sanctions, that his right to a jury trial on the reasonableness of his attorney fees was violated, and that the bankruptcy judge should have recused himself. The district court affirmed the bankruptcy court on all issues, and Hale timely appealed to this court.

## STANDARD OF REVIEW

"We review de novo a district court's decision on appeal from a bankruptcy court. That is, we review the bankruptcy court's decision independently and give no deference to the district court's determinations." *Dawson v. Wash. Mut. Bank (In re Dawson)*, 390 F.3d 1139, 1145 (9th Cir. 2004) (citation omitted).

## DISCUSSION

After six years, two bankruptcy court decisions, one district court decision, and numerous motions and filings, it is important to identify the precise issues raised in this appeal. Hale does not challenge either the bankruptcy court's findings of

fact—including the finding that he violated Federal Bankruptcy Rule 9011(a)—or its denial of his motion for judicial recusal. Consequently, those issues are waived. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.").

Instead, Hale limits his appeal to three issues. He argues that he is entitled to a jury trial on the reasonableness of his attorney fees. He also asks this court to examine the reasonableness of his attorney fees, which we construe as an objection to the bankruptcy court's disgorgement of his attorney fees. Finally, he argues that the bankruptcy court improperly sanctioned him.

We review de novo a litigant's entitlement to a jury trial. *Kulas v. Flores*, 255 F.3d 780, 783 (9th Cir. 2001). We review for abuse of discretion a bankruptcy court's decision on attorney fees. *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 880 (9th Cir. 1995). We also review for abuse of discretion a bankruptcy court's award of sanctions. *Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 547 (9th Cir. 2004).

A. *The Seventh Amendment does not include a right to a jury trial on the reasonableness of attorney fees in bankruptcy proceedings.*

**[1]** Hale argues that the right to a jury trial under the Seventh Amendment of the United States Constitution extends to determining the reasonableness of attorney fees in a bankruptcy proceeding,[3] notwithstanding 11 U.S.C. § 329(b),

---

[3]The Seventh Amendment provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

U.S. Const. amend. VII.

which empowers a bankruptcy judge to make that determination. In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 n.4 (1989), the Supreme Court held that "[t]he Seventh Amendment protects a litigant's right to a jury trial only if a cause of action is legal in nature and it involves a matter of 'private right.' "[4]

To determine when a Seventh Amendment right to a jury trial exists, the Court established a three-part test. "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Id.* at 42 (internal quotation marks omitted).

> Although the thrust of the Amendment was to preserve the right to jury trial as it existed in 1791, the Seventh Amendment also applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century . . . .

*Id.* at 41-42 (internal quotation marks omitted). "Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first." *Id.* at 42 (citation and internal quotation marks omitted). Third, we examine the nature of the right asserted. "If a claim that is legal in nature asserts a 'public right,' . . . then the Seventh Amendment does not entitle the parties to a jury trial if Congress assigns its adjudication to an administrative agency or specialized court of equity." *Id.* at 42 n.4. A case asserts a public right if it "arise[s] between the Government and persons subject to its authority in con-

---

[4]In *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 788 (9th Cir. 2007), we held that, after a party identifies a valid right to a Seventh Amendment jury trial in bankruptcy proceedings, "the bankruptcy court may retain jurisdiction over the action for pre-trial matters." The right to a jury trial in that case was not disputed, and the case did not involve an issue of attorney fees.

nection with the performance of the constitutional functions of the executive or legislative departments," *id.* at 51 n.8 (internal quotation marks omitted), or involves "a seemingly private right" created by Congress "that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary," *id.* at 54 (internal quotation marks omitted).

**[2]** In conformity with those principles, Hale's argument is foreclosed by *In re Wood*, 210 U.S. 246 (1908). In *Wood*, the Supreme Court examined whether the Bankruptcy Act of 1898, ch. 541, § 60d, 30 Stat. 544, 562 (codified as amended at 11 U.S.C. § 96(d)), a statutory predecessor to 11 U.S.C. § 329, violated the Seventh Amendment. 210 U.S. at 258. Section 60d, like § 329, authorized a bankruptcy court to examine the reasonableness of a debtor's attorney fees and to disgorge fees that the court deemed excessive. *Wood*, 210 U.S. at 250. The Supreme Court expressly held that this provision did "not deprive parties of rights secured under the 7th Amendment of the Constitution to trials by jury in suits at common law where the value in controversy exceeds $20." *Id.* at 258. Section 60d is indistinguishable in all relevant respects from its successor at issue in this case, 11 U.S.C. § 329.

**[3]** The Supreme Court has not overruled *Wood*. In addition, *Wood* is consistent with, and reaffirmed by, *Granfinanciera*. Determining the reasonableness of a debtor's attorney fees is not analogous to a common-law cause of action ordinarily decided in English law courts in the late 18th century; instead, it is closely integrated into the public regulatory scheme of bankruptcy law that Congress created. We hold that *Wood* remains binding precedent and forecloses Hale's argument that the Seventh Amendment includes a right to a jury trial on the reasonableness of attorney fees in bankruptcy proceedings.

B.  *The bankruptcy court did not abuse its discretion in disgorging Hale of his attorney fees.*

Hale asks us, should we disagree with his Seventh Amendment argument, to examine the reasonableness of his attorney fees. He argues that the question of reasonableness is an "issue [that] still has not been decided in this case." He is mistaken. The bankruptcy court squarely ruled that Hale's fees were unreasonable and, pursuant to its authority under 11 U.S.C. § 329(b), ordered that the fees be disgorged.

**[4]** Under § 329(b), a bankruptcy court may examine the reasonableness of a debtor's attorney fees and, "[i]f such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive." Here, the only service Hale provided to Debtors was the completion of a bankruptcy petition that was incomplete and erroneous and that required extensive amendments. He failed to inform Debtors about the bankruptcy process, obtain their informed consent to his limited representation, or notify them about the impending meeting of creditors. Instead, he attempted to persuade them to dismiss their petition without explaining why or how it would affect their rights. Debtors ultimately paid $1000 to correct and supplement the work that Hale performed. The bankruptcy court did not abuse its discretion in disgorging Hale of his attorney fees.

C.  *The bankruptcy court did not abuse its discretion in sanctioning Hale.*

**[5]** Finally, Hale argues that he was not given notice of, and an opportunity to respond to, the U.S. Trustee's motion for sanctions against him. This argument is belied by the record. The U.S. Trustee filed an amended motion for sanctions more than six weeks in advance of the hearing, and the Trustee served Hale with the motion at two separate addresses in accordance with the applicable procedural rules. Hale there-

fore knew (or should have known) about the motion for sanctions when he filed a motion two days before the hearing, in which he told the bankruptcy court that "[his] presence [wa]s not mandated or necessary to the adjudication of the issues."

Hale also argues that the bankruptcy court improperly imposed sanctions under Federal Rule of Bankruptcy Procedure 9011. Under Rule 9011(c), "[i]f . . . the court determines that [9011](b) has been violated, the court may . . . impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." The bankruptcy court sanctioned Hale for violating 9011*(a)*, not 9011*(b)*. Nowhere in its decision does the bankruptcy court even mention Rule 9011(b), although this omission is not surprising. Rule 9011(b) concerns papers signed, filed, submitted, or advocated to the court in bad faith, while the bankruptcy court found that Hale took none of those actions—specifically to avoid liability under the Rule. Hale's evasive tactics notwithstanding, the plain text of Rule 9011(c) does not authorize sanctions for violating Rule 9011(a).

**[6]** But "bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court." *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Id.* at 283 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). The U.S. Trustee included this authority as a ground for imposing sanctions in its motion, and the bankruptcy court invoked this authority as an alternative basis for imposing sanctions. *See DeVille*, 361 F.3d at 550 n.4 (noting that an appellate court will not "overturn the bankruptcy court's decision merely because that court applied the wrong label to the righteous use of its inherent sanction power" (internal quotation marks omitted)).

In an effort to avoid liability, Hale did not sign Debtors' bankruptcy petition. He had an extensive history—and an ongoing practice—of similar violations. Despite assertions to the contrary, he failed to obtain informed consent to his limited representation. He failed to inform his clients about the meeting of creditors required under 11 U.S.C. § 341 and to highlight the fact that he did not intend to represent them at the meeting. He attempted to persuade his clients to dismiss their bankruptcy petition without explaining why or what prejudice they might suffer if they did so. When the bankruptcy court inquired into his representation, he failed to attend hearings, giving little or no advance notice of his absence, and accused the court, on the basis of unaccredited hearsay, of bias and impropriety.

**[7]** We agree with the bankruptcy court that it should "not countenance Hale's exclusion of critical and necessary services, or endorse the pretense of adequately advised and informed consent in Hale's bankruptcy cases." Although the court effectively barred Hale from assisting pro se debtors in a limited manner that allows the debtors to remain pro se, the court ordered those sanctions in response to specific and repeated acts of incompetent and irresponsible representation. Under the specific facts of this case, we cannot say that the bankruptcy court abused its inherent power to impose sanctions.

AFFIRMED.