NOT FOR PUBLICATION            MAY 22 2013

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.  EC-12-1471-JuMkD |
| | BAP No.  EC-12-1485-JuMkD |
| WEST COAST REAL ESTATE & MORTGAGE INC., | BAP No.  EC-12-1493-JuMkD |
| | BAP No.  EC-12-1498-JuMkD |
| | (cross appeals) |
| Debtor. | |
| | Bk. No.  12-30686 |
| DON SMITH; HOWARD BROWN, III; WEST COAST REAL ESTATE & MORTGAGE INC., | |
| Appellants/Cross-Appellees, | |
| v. | **M E M O R A N D U M**[*] |
| SA CHALLENGER, INC., | |
| Appellee/Cross-Appellant, | |
| DOUGLAS M. WHATLEY, Trustee; UNITED STATES TRUSTEE, | |
| Appellees. | |

Argued and Submitted on March 22, 2013
at Sacramento, California

Filed - May 22, 2013

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Robert S. Bardwil, Bankruptcy Judge, Presiding

Appearances:    Garland O'Bryan Bell, Jr., Esq. argued for Appellants Don Smith, Howard Brown, III, and West Coast Real Estate & Mortgage Inc.; Joshua D. Wayser, Esq. of Katten Muchin Rosenman LLP, argued for Appellee SA Challenger, Inc.

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Before: JURY, MARKELL and DUNN, Bankruptcy Judges.

These appeals and cross-appeals arise from two sanctions orders in favor of Appellee, SA Challenger, Inc. (SACI), and against Appellants, Don Smith (Smith), Howard Brown, III (Brown) and chapter 11[1] debtor, West Coast Real Estate & Mortgage Inc. (West Coast)(collectively, Appellants), in the amount of $20,000 to be paid jointly and severally.

Appellants argue that the bankruptcy court abused its discretion in awarding the sanctions under § 105 because the $20,000 award was punitive in nature and the amount arbitrary and lacking evidentiary support. SACI cross-appeals,[2] also arguing that the bankruptcy court abused its discretion in determining the amount of the sanctions. According to SACI, the record supports an award of $134,885.82, which includes $33,459.82 in attorneys' fees and $101,436.00 in missing rents that were unaccounted for and constituted SACI's cash collateral.

We agree with Appellants that the sanctions award appears arbitrary because the bankruptcy court did not explain how it arrived at the $20,000 amount which it based on SACI's

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] Appellees, Douglas M. Whatley, the chapter 7 trustee for West Coast, and the United States Trustee (UST) have not participated in these matters.

reasonable attorneys' fees. As a result, we are unable to determine how the court exercised its discretion and thus cannot conduct a meaningful review of the award. We therefore VACATE the sanctions orders and REMAND to the bankruptcy court so that it can make additional findings and explain its conclusions regarding the amount of the award. We do not express any opinion whether the amount of the sanctions previously awarded based on SACI's attorneys' fees should or should not be changed.

Because of our remand, we conclude that SACI's cross-appeals challenging the amount of the sanctions awarded based on its attorneys' fees are moot. However, on the issue of sanctions based on the missing rents, we AFFIRM the bankruptcy court's decision for the reasons discussed below.

## I. FACTS AND PROCEDURAL BACKGROUND

The facts leading up to the entry of the sanctions orders are a textbook example of bad faith. Appellants' conduct that gave rise to the sanctions involved the transfer of real property owned by chapter 11 debtor, Sundance Eldorado Self-Storage LP (Sundance). Sundance, through Brown, transferred the property by grant deed to West Coast after U.S. Bank (Bank) obtained relief from the automatic stay in Sundance's bankruptcy and on the eve of the Bank's foreclosure. The transfer of the property was immediately followed by West Coast's filing of a chapter 11 petition, signed by Smith, the 100% owner of West Coast and its president. Needless to say, West Coast's bankruptcy filing halted the Bank's efforts to foreclose on the property due to the imposition of the automatic stay. The facts relating to the transfer of the real property are not disputed

-3-

on appeal[3] and are as follows.

Sundance was a self storage business located in Eldorado Hills, California. On January 12, 2007, Pacific National Bank (PNB) loaned $5.95 million (Loan) to Sundance. The Loan was secured by a deed of trust, assignment of rents, security agreement, and fixture filing recorded against Sundance's real property. At Sundance's request, PNB modified the Loan three times over two years. After the last modification, the Federal Deposit Insurance Corporation placed PNB into receivership and the assets of PNB, including the Loan, were sold to the Bank. Sundance defaulted on the Loan in February 2010.

### Sundance's First Bankruptcy Case

On May 31, 2010, Sundance filed a chapter 11 petition. The bankruptcy court dismissed the case because Sundance did not file the required documents. After dismissal, the Bank filed a Notice of Default and Election to Sell Under Deed of Trust with respect to the property.

### Sundance's Second Bankruptcy Case

On June 25, 2010, Sundance filed a second chapter 11 petition, Case No. 10-36676 (Second Sundance Bankruptcy). Smith signed the petition as manager of operations. On July 19, 2010, the Bank filed its first motion for relief from the automatic stay.

Sundance then filed a motion to use the Bank's cash collateral. Because Sundance was in the process of finding a

---

[3] Many of the facts are taken from the bankruptcy court's written rulings dated June 27, 2012, and August 29, 2012.

-4-

buyer for the property, the Bank agreed that Sundance could use its cash collateral with the qualification that such use terminated if the Bank obtained relief from stay. The Bank also required Sundance to pay 60% of its monthly interest payment on its Loan. Sundance could not secure a buyer.

After an unsuccessful second motion for relief from stay, the Bank sought relief from stay for a third time on June 15, 2011. The latter motion was continued several times to give Sundance the opportunity to reorganize the property.

On January 17, 2012, Sundance filed its third amended plan and disclosure statement. Peninsula Capital Group Inc. (Peninsula) was the general partner for Sundance and a joint proponent of the plan along with Brown, who was the owner and sole officer of Peninsula. Peninsula was seen as a potential source of new funding and guarantor of the plan.

On March 28, 2012, the bankruptcy court held an evidentiary hearing on plan confirmation and took the matter under submission.

On April 12, 2012, the bankruptcy court issued a Memorandum Decision granting the Bank relief from stay and denying confirmation of Sundance's plan of reorganization. In granting the Bank relief from stay, the court found, among other things, that: (1) Sundance defaulted under the terms of the Loan documents; (2) Sundance's plan was not feasible and likely would be followed by liquidation; and (3) Sundance lacked equity in the property, a plan was unlikely to be confirmed, and the property was not necessary to an effective reorganization. The court entered the order granting the Bank relief from stay on

-5-

April 12, 2012.

The Bank scheduled the foreclosure sale on June 5, 2012.

On April 23, 2012, the UST filed a motion to dismiss or convert Sundance's case to chapter 7. Brown filed a response in favor of dismissal and opposing conversion and Sundance submitted declarations asking the bankruptcy court to stop the Bank's foreclosure.

**The State Court Lawsuit**

On April 30, 2012, two weeks after the bankruptcy court entered its Memorandum Decision, Sundance filed a complaint and application for injunctive relief in the El Dorado County Superior Court (State Court) to enjoin the Bank's then-scheduled June 5, 2012 foreclosure sale. Smith filed a declaration in support of the application and served as Sundance's representative at the related hearings. Following two hearings, on May 24, 2012, the State Court denied injunctive relief.[4] The Bank continued with its foreclosure efforts.

**The Transfer of Sundance's Property**

On May 24, 2012, the same day that the State Court denied Sundance injunctive relief, Sundance transferred its real property by grant deed to West Coast. Brown, in his individual capacity, signed the grant deed on Sundance's behalf. The grant deed was recorded on May 29, 2012, in the County of El Dorado as

---

[4] In their opening brief, Appellants contend that the injunction was not granted because their attorney was unable to obtain the documents and declarations that would have shown that the Bank had "probably" made misrepresentations of the Loan obligation to Sundance and the bankruptcy court. None of those documents or declarations are in the record on appeal.

-6-

DOC-2012-0025784-00.

## The Conversion Hearing

On May 30, 2012, the bankruptcy court heard the UST's motion to dismiss or convert the Second Sundance Bankruptcy case. The court granted the UST's request for conversion. Although Brown's attorney appeared at the hearing, he did not inform the bankruptcy court, the Bank, or the UST's office that the property had been transferred.[5] The bankruptcy court entered a minute order dated June 4, 2012, converting the case to chapter 7.

## West Coast's Bankruptcy Case

The same day that Sundance's case was converted, West Coast filed a chapter 11 petition, which Smith signed as President. Smith was also the 100% owner of West Coast. The schedules listed the property transferred by Sundance as West Coast's only asset and listed as creditors only the Bank and a few others with minor debts. The income listed in the past two years was "Debtor Loss on Property." West Coast described the nature of its business as real estate and mortgage without mentioning a self-storage facility or relationship to the Second Sundance Bankruptcy.

The next day, the Bank filed a Notice of Claim to Rents, alerting all interested parties that the rents from the property

---

[5] Brown's attorney, Mr. Isley, later stated at the August 29, 2012 sanctions hearing that at the time of the hearing on the dismissal or conversion of Sundance's Second Bankruptcy case, he had "no clue" that "any of this stuff had happened" and that he "didn't hear about it until probably several weeks later." Hr'g Tr. 8/29/12 at 11:15-23.

-7-

could not be used for any purpose.

On June 8, 2012, the Bank filed an Expedited Motion for Relief From the Automatic Stay and For Sanctions Against Don Smith and West Coast. The motion sought relief from the automatic stay based upon the transfer of the property followed by West Coast's bad faith bankruptcy filing. The Bank sought sanctions against Smith and West Coast, with the amount left for later determination, on the grounds that Smith had willfully disobeyed the bankruptcy court's relief from stay order in the Second Sundance Bankruptcy case when he transferred the property outside the ordinary course to West Coast one week before the foreclosure and West Coast then, in bad faith, filed the bankruptcy to hinder and delay the Bank's foreclosure. The Bank also sought dismissal of West Coast's case under the bankruptcy court's inherent power to sanction.

In support of its motion, the Bank submitted the declaration of Jessica M. Mickelsen. Mickelsen — one of the attorneys representing the Bank — declared that as a result of West Coast's filing, the Bank had incurred approximately $15,000 in attorneys' fees and costs.

On June 12, 2012, West Coast filed a motion to use the Bank's cash collateral. The motion did not mention the history of Sundance's previous use of the Bank's cash collateral nor did it mention that the Bank's permission to use the cash collateral had expired when the bankruptcy court granted the Bank's motion for relief from stay in the Second Sundance Bankruptcy. The motion also failed to disclose the transfer of the real property from Sundance to West Coast.

The Bank opposed the cash collateral motion on several grounds: (1) the bad faith transfer of the property; (2) West Coast's bad faith failure to account for at least $23,895.82 of cash collateral as of June 2012, which West Coast apparently acquired from Sundance as a result of the transfer of the property; and (3) the flawed budget that West Coast submitted, including substantially decreased payments to the Bank (from $23,500 per month, which is what Bank received before Sundance stopped paying, to $13,167 per month).

In the end, the Bank argued that West Coast's bad faith acts in hiding cash collateral warranted sanctions under § 105, including the dismissal of the case. In support of this latter request and allegations regarding the missing rents, the Bank submitted Mickelsen's declaration which stated that Sundance had not filed monthly operating reports since March 2012.

On June 27, 2012, the bankruptcy court heard the Bank's expedited motion for relief from stay and sanctions and West Coast's motion to use cash collateral.[6] Prior to the hearing, the court had issued a tentative ruling granting the motion. After hearing oral argument, the bankruptcy court adopted its tentative ruling and issued an amended written ruling. There, the court concluded that the attempted transfer of the property by Sundance to West Coast was in bad faith as to the Bank and the other creditors and renters of Sundance. The court found that as to the Bank, the purported transfer was an attempt to

[6] The bankruptcy court denied West Coast's cash collateral motion by minute order entered July 2, 2012.

-9-

hinder and delay its foreclosure proceeding after Sundance's two-year attempt to confirm a plan while under the protection of the automatic stay. As to the renters, the bankruptcy court observed that the transfer of the property put those parties in a position of owing rent to Sundance's bankruptcy estate, while at the same time, West Coast would be attempting to collect their rent. As to the other creditors, the court found the transfer was an attempt to retain the property and its benefits while divesting the property owner of any obligations to those creditors. Finally, the bankruptcy court found West Coast's failures to give notice of its case to any of the renters or creditors as further indicia of bad faith.

In addition, the court did not overlook Smith's role in facilitating the transfer of the property. The court observed that Smith was the president of West Coast while simultaneously acting as operations manager for Sundance and had full knowledge that Sundance was a chapter 11 debtor-in-possession when he orchestrated the transfer.

For all these reasons, the bankruptcy court found it appropriate to issue sanctions against West Coast and Smith in the amount of the Bank's reasonable attorneys' fees and costs incurred in connection with West Coast's case. In the end, the court stated that it would also award sanctions against Brown for his complicity in these acts. The bankruptcy court set a further hearing to determine the amount of the sanctions for August 29, 2012.

After the Bank obtained relief from stay, it assigned the deed of trust and loan documents to SACI, a related entity to

the Bank.[7]  SACI foreclosed on the property by credit bid on June 29, 2012.

On July 31, 2012, Smith filed opposition to the Bank's motion for sanctions.  Smith admitted that the transfer took place but claimed that he did not know that the property could not be sold subject to existing financing without court approval.  Smith also maintained that he paid expenses from his private funds to run the business so as not to use any cash collateral.  As further justification for his conduct, Smith contended that he believed the transfer of the property was the only way to bring the Bank's fraudulent actions before the court.  Finally, Smith asserted that there was no competent evidence before the bankruptcy court to support an award of attorneys' fees to the Bank.  Smith filed a separate pleading objecting to Mickelsen's declaration on the grounds that (1) there was no foundation to support her assertion that the Bank had incurred approximately $15,000 in fees and (2) her statement was hearsay.

On August 1, 2012, SACI filed a motion for sanctions in West Coast's bankruptcy against Brown for his complicity in the bad faith transfer of the property based on the bankruptcy court's inherent authority under § 105.  SACI alleged that Brown (1) signed the grant deed that documented the transfer of the property from Sundance to West Coast on the same day that the State Court denied Sundance's request to enjoin the foreclosure

---

[7] Hereinafter when we refer to the Bank such references apply equally to SACI and vice versa.

-11-

of the property and six days before the UST's motion to dismiss or convert hearing in the Second Sundance Bankruptcy; (2) failed to disclose the transfer to the bankruptcy court at the dismissal/conversion hearing, despite the facts that the transfer occurred six days earlier, was recorded the day before the hearing, and counsel for Brown appeared at the hearing and presented argument; and (3) failed to seek approval from the bankruptcy court before transferring the property. Based on these acts, SACI sought sanctions against Brown in the amount of $147,078.82 that consisted of its legal fees and costs and missing rents for the months of June, July, and August 2012, which constituted its cash collateral.

SACI submitted the declaration of Joshua D. Wayser, counsel for SACI, in conjunction with its motion. Wayser declared that he reviewed his firm's bills for the months of June and July 2012 and as of July 27, 2012, the fees totaled $33,459.82. Attached to Wayser's declaration were redacted bills evidencing the charges. Wayser further sought as sanctions the missing rents in the estimated amount of $113,619. That amount was subsequently reduced to $101,436 based upon $12,183 SACI received after taking possession of the property on August 6, 2012. Wayser declared that SACI was seeking the missing rents as sanctions because it otherwise would have been entitled to collect the rents for those months had the transfer of the property and subsequent bankruptcy not occurred and had SACI been allowed to timely foreclose on the property.

On August 13, 2012, the UST filed a statement regarding the Bank's motion for sanctions and related declaration of Smith.

-12-

The UST stated that the unauthorized transfer of the property was an egregious breach of duty on the part of the responsible representatives of Sundance. Beyond this, the UST did not take a position on the motion. However, the UST pointed out that Smith's declaration should not be read to imply that Smith did not know that the transfer of the property had been recorded at the time he met with the UST. Smith declared that he learned about the recording on the afternoon of May 30, 2012, but he met with the UST after that date and did not inform counsel for the UST about the transfer of the property. Attached to the UST's statement of position was the declaration of Jason Blumberg which verified the meeting date between Smith and the UST.

On the same date, SACI filed a reply in support of the motion for sanctions against Smith. SACI pointed out that Smith continued to thwart SACI's exercise of ownership rights over the foreclosed property. SACI maintained that due to Smith's actions, it filed an adversary proceeding against him seeking a temporary restraining order (TRO) and preliminary injunction which the bankruptcy granted on August 1, 2012, and August 13, 2012, respectively. Based on Smith's conduct, SACI argued that significant sanctions were warranted to deter his conduct. According to SACI, there were no mitigating factors — Smith had been through two personal bankruptcies and thus plainly had knowledge of the bankruptcy process and the necessity for obtaining court approval for certain transactions. In the end, SACI requested the bankruptcy court to award it not only the full amount of its attorneys' fees and costs, but also the amount for the missing rents.

-13-

On August 15, 2012, Brown filed an opposition to SACI's motion for sanctions. Brown asserted that the bankruptcy court should abstain from exercising jurisdiction over the tort (sanctions) claim of SACI. Brown argued that he and Peninsula were outside third parties and had no involvement with the West Coast proceedings and that a judgment against Brown would have no possible effect on West Coast's rights or the handling of its estate. According to Brown, the third party action should be taken in state court. He further argued that the sanctions motion required an adversary proceeding because SACI sought to essentially have Brown turn over all income from the property allegedly received by Sundance and West Coast for the months of June, July and August 2012. Brown also maintained that he did not have any personal involvement because he signed the grant deed in his capacity as president of Peninsula.

Finally, Brown argued that there was no evidence submitted to support SACI's claim of damages for the missing rents nor was SACI entitled to assert a cash collateral claim after the trustee's sale which extinguished the note and deed of trust. With respect to the attorneys' fees, Brown complained that Wayser's hourly rate of $675 was far above sums awarded to attorneys in the Eastern District of California. Brown further pointed out that the billing statements were improper because the services were lumped together, the descriptions insufficient to understand what services were performed, and the hours were not revised despite some entries being redacted.

On August 15, 2012, West Coast also filed opposition to the Bank's sanctions motion. West Coast's opposition simply

-14-

incorporated Smith's and Brown's arguments set forth in their memoranda.

On August 20, 2012, Smith filed a sur-reply to the Bank's motion for sanctions. Smith argued that Wayser's declaration should be stricken because Wayser had not stated facts that would establish a foundation for the estimated attorneys' fees and furthermore, the declaration constituted hearsay. Smith also reiterated some of Brown's arguments; i.e., that Wayser's hourly rate was too high and the billing statements did not have detailed time and expense entries. In addition, Smith contended that SACI's claim of missing rents was a "new matter" because it was not contained in the Bank's original motion for sanctions and thus should be stricken. On the same day, Smith filed a separate pleading containing his evidentiary objections to Wayser's declaration.

The bankruptcy court then issued a tentative ruling finding, among other things, that SACI incurred attorneys' fees of at least $20,000 due to Smith's and Brown's actions, and that such amount should be payable jointly and severally by Smith, Brown and the debtor.

At the August 29, 2012 sanctions hearing, Smith's attorney, Mr. Bell, requested the bankruptcy court to rule on Smith's evidentiary objections. Bell also maintained that Smith was unable to pay the $20,000 award due to Smith's personal bankruptcy which he had filed a few years before. Finally, Bell asserted that $5,000 would be appropriate due to the lack of evidence supporting the larger award and the circumstances of the case. Brown's attorney, Isley, essentially reiterated the

-15-

arguments set forth in Brown's pleadings as mentioned above.

Wayser responded by first noting that his firm gave a 15% discount on all the fees so that the $675 hourly rate was not accurate. Next, Wayser argued that as to the amount of the fees, they provided the bills and did not seek any of the attorneys' fees in the related adversary proceeding against Smith.[8]

The bankruptcy court stated that none of the arguments had changed its previous view of the case. The court took the matter under submission and, on the same day, issued final rulings in the matters. With respect to Brown, the bankruptcy court found: (1) Brown's conduct in signing the grant deed in favor of West Coast constituted bad faith and willful misconduct sufficient to justify an award of sanctions against him under the court's inherent power; (2) Brown breached his fiduciary duties to the Sundance bankruptcy estate and its creditors; and (3) no adversary proceeding was needed because the matter did not involve turnover of funds, but was instead a request for an award of sanctions under the court's inherent power. The bankruptcy court granted SACI's motion in part by awarding its reasonable attorneys' fees in the sum of $20,000 against Appellants, jointly and severally. The court stated that the fees incurred were for the Bank's motion for relief from stay and to dismiss West Coast's case, for seeking sanctions against

[8] Recall that the adversary related to SACI's motion for a TRO and preliminary injunction against Smith who continued to thwart SACI's attempts to gain possession of the property after SACI foreclosed.

-16-

West Coast and Smith, and for SACI's motion for sanctions against Brown. The bankruptcy court did not further elaborate as to how it arrived at the $20,000 amount.

In a separate ruling concerning West Coast and Smith, the bankruptcy court found: (1) Smith's explanations regarding the transfer of the property were not credible; (2) West Coast's and Smiths' conduct in initiating and completing the transfer of the property and the filing of the chapter 11 petition constituted bad faith and willful misconduct sufficient to justify an award of sanctions against them; and (3) the amount of $20,000 to be paid jointly and severally with Brown was an appropriate sanction.

In addressing SACI's request for sanctions in the amount of the missing rents, the bankruptcy court noted that after the foreclosure, the real property and rights to its rents were no longer property of the estate. Due to this fact and relying on Fietz v. Great W. Sav. (In re Fietz), 852 F.2d 455, 457 (9th Cir. 1988), the bankruptcy court stated it was not persuaded that it had jurisdiction to award sanctions for conduct that interfered with SACI's rights to the real property and the rental income post-foreclosure.

However, the bankruptcy court, assuming for the purpose of ruling that it had jurisdiction, denied SACI's request for sanctions in the amount of the missing rents. The court reasoned that any damages arising from post-foreclosure conduct were between SACI, on the one hand, and West Coast, Smith and Brown, on the other, and any connection with the bankruptcy estate was tangential at best. The bankruptcy court's decision

-17-

was without prejudice to SACI's right to seek, in another court, an award of additional amounts on account of rents lost as a result of West Coast's and Smith's post-foreclosure conduct, and without prejudice to SACI's right to seek, in another court, an award of damages or other relief on any other basis.

The bankruptcy court entered the two orders granting sanctions in favor of SACI and against Appellants on August 30, 2012.[9] The order entered in connection with the Bank's motion awarded sanctions against West Coast and Smith (Smith Order). The order entered with respect to SACI's motion awarded sanctions against Brown (Brown Order). Both orders indicate that a single sanction in the amount of $20,000 was imposed against the Appellants and is payable jointly and severally.

Appellants filed a single notice of appeal for both the sanctions orders on September 12, 2012. The Smith Order was assigned BAP No. EC-12-1471 and the Brown Order was assigned BAP No. EC-12-1485.

SACI filed a notice of cross-appeal from both orders on September 26, 2012. The cross-appeal of the Smith Order was assigned BAP No. EC-12-1493 and the cross-appeal of the Brown Order was assigned BAP No. EC-12-1498.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(a) and (b)(1). We have

_____

[9] The orders provided that the sanctions were payable no later than September 20, 2012. It does not appear that Appellants obtained a stay pending appeal and there is no indication in the record that any of the sanctions award has been paid by either Smith or Brown.

-18-

jurisdiction under 28 U.S.C. § 158.

## III.   ISSUES

A.   Whether the bankruptcy court abused its discretion in awarding sanctions in the amount of $20,000 against Appellants; and

B.   Whether the bankruptcy court abused its discretion in denying SACI's request for sanctions based on the amount of missing rents which constituted SACI's cash collateral.

## IV.   STANDARDS OF REVIEW

An award or denial of sanctions under § 105(a) is reviewed for abuse of discretion. Nash v. Clark Cnty. Dist. Attorney's Office (In re Nash), 464 B.R. 874, 878 (9th Cir. BAP 2012). The appropriateness of the amount of the sanctions imposed also is reviewed for an abuse of discretion. Asher v. Film Ventures Int'l, Inc. (In re Film Ventures Int'l, Inc.), 89 B.R. 80, 83 (9th Cir. BAP 1988).

We review the bankruptcy court's evidentiary rulings for an abuse of discretion. Latman v. Burdette, 366 F.3d 774, 786 (9th Cir. 2004). To reverse on the basis of an erroneous evidentiary ruling, we must conclude not only that the bankruptcy court abused its discretion, but also that the error was prejudicial. Id.

A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible, or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

-19-

## V. DISCUSSION

Bankruptcy courts have inherent sanction power under § 105(a) which states in relevant part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. . . ." See also Miller v. Cardinale (In re DeVille), 361 F.3d 539 (9th Cir. 2004); Caldwell v. Unified Capital Corp. (In re Rainbow Magazine), 77 F.3d 278, 284 (9th Cir. 1996). "The court's inherent authority to sanction includes not only the authority to sanction a party, but also the authority to sanction the conduct of a nonparty who participates in abusive litigation practices, or whose actions or omissions cause the parties to incur additional expenses." In re Avon Townhomes Venture, 433 B.R. 269, 304 (Bankr. N.D. Cal. 2010) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 50-51 (1991) (affirming imposition of sanctions on an individual for conduct before other tribunals that constituted an abuse of process, even though the individual was not a party when the misconduct occurred); and In re Rainbow Magazine, Inc., 77 F.3d at 278 (upholding sanctions levied under the court's inherent powers against corporate debtor's principal who orchestrated the bad faith filing of the bankruptcy petition)).

The bankruptcy court's inherent sanction power allows it to deter and provide compensation for bad faith litigation. See Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1196 (9th Cir. 2003). Before the bankruptcy court imposes sanctions under its inherent power, it must make an explicit finding of bad faith or willful misconduct. Id. "[B]ad faith or willful misconduct

-20-

consists of something more egregious than mere negligence or recklessness." Id.

Once a finding of bad faith or willful misconduct has been made, a court may award attorneys' fees and costs as a sanction to compensate the prevailing party for expenses incurred by his or her opponent's bad faith litigation tactics. Chambers, 501 U.S. at 45-46. However, the long-settled rule is that inherent powers must be exercised with restraint and discretion. Id. at 44. Thus, the "court should be cautious in exerting its inherent power and 'must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees.'" Id. at 50.

**A.    The Merits:  Appeals EC-12-1471 and EC-12-1485**

Here, the bankruptcy court made express findings regarding Appellants' bad faith and willful misconduct which is the primary prerequisite for sanctions under the court's inherent power. In re Dyer, 322 F.3d at 1196. Indeed, the sanctionable conduct of West Coast, Smith and Brown included complicity in transferring Sundance's property to West Coast followed by West Coast's bankruptcy filing on the eve of the Bank's scheduled foreclosure. According to the bankruptcy court, these acts were part of a scheme to harass, delay and increase the Bank's and SACI's litigation costs. Appellants do not challenge any of the bankruptcy court's bad faith findings on appeal, instead complaining that the sanctions award was punitive in nature, arbitrary in amount and lacked evidentiary support.

**The Punitive Nature of the Sanctions**

Because the court lifted the stay and voided the transfer

-21-

of the property, Appellants assert that this was a sufficient sanction against Smith and West Coast. Therefore, any sanctions beyond this, Appellants argue, were punitive and thus exceeded the bankruptcy court's inherent authority.

Smith had made this same argument in the bankruptcy court, which the court rejected noting that the order lifting the stay operated in conjunction with the Bank's foreclosure to deprive Smith and West Coast of property that should not have been theirs in the first place. We agree with the bankruptcy court's conclusion that nothing of value was taken from Smith or West Coast and, therefore, their asserted "loss" did not operate as a sanction against them.

Moreover, the bankruptcy court explicitly stated that the sanctions award was based on SACI's attorneys' fees incurred as a result of Appellants' bad faith conduct. Sanctions based on attorneys' fees are compensatory and within the bankruptcy court's inherent authority. In re DeVille, 361 F.3d at 546; see also Chambers, 501 U.S. at 44 (the less severe sanction of an assessment of attorneys' fees is undoubtedly within a court's inherent power). Furthermore, compensatory sanctions are not considered criminal penalties: "Civil penalties must either be compensatory or designed to coerce compliance." In re Dyer, 322 F.3d at 1192 (citing F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1137-38 (9th Cir. 2001)); see also Lasar v. Ford Motor Co., 399 F.3d 1101, 1110 (9th Cir. 2005) (sanctions that compensate for harm caused are civil). Accordingly, the sanctions awarded based on SACI's attorneys' fees were compensatory and not punitive in nature.

-22-

**The Amount of the Sanctions**

Appellants next complain that the bankruptcy court abused its discretion in awarding sanctions because (1) there was no admissible evidence to support the award of attorneys' fees[10] and (2) the award was arbitrary because the court failed to explain how it arrived at the $20,000 amount. We address each of these arguments in turn below.

Smith objected to Wayser's declaration which attached his law firm's billing records on the grounds that (1) it was not admissible under Fed. R. Evid. 602 for lack of personal knowledge, and (2) it constituted hearsay and thus was not admissible under Fed. R. Evid. 803(6), the business records exception.[11] Appellants contend the bankruptcy court erred because it did not rule on these objections. Appellants' contention is incorrect. In its written ruling dated August 29, 2012, the bankruptcy court explicitly found that Wayser's declaration "sufficiently establishes a foundation for the testimony that true and correct copies of the firm's billing statements are filed as exhibits." The court further opined:

> It is difficult to understand what further evidence Smith would require [-] a declaration from each individual who worked on the case? In any event, the court is satisfied that the billing statements demonstrate, by clear and convincing evidence, to the extent that is necessary, that attorneys' fees of at

---

[10] Indeed, at oral argument, Appellants' attorney emphasized that the primary reason, if not the sole reason, for seeking reversal of the sanctions award was the lack of evidentiary support.

[11] Although Smith had also objected to Mickelsen's declaration on the same grounds, SACI supplemented the record with Wayser's declaration.

-23-

least $20,000 were reasonably incurred as a direct result of Smith[']s unconscionable actions detailed above.

Moreover, at the very least, the bankruptcy court was aware of the objections at the August 29, 2012 hearing and implicitly overruled them when it stated that "I didn't hear anything today that changed my position in regards to the tentative." We thus conclude that the objections were overruled and the evidence was admitted.

Fed. Rule Evid. 602 states that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." See also United States v. Dibble, 429 F.2d 598, 602 (9th Cir. 1970) ("The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery."). In his declaration, Wayser stated that he was one of the attorneys at his firm responsible for representing SACI in the bankruptcy case and the adversary proceeding. He further stated that based on that responsibility, he had personal knowledge of the facts contained in his declaration. Wayser also summarized the services that his firm performed in the West Coast bankruptcy case and stated that he reviewed the firm bills for the months of June and July 2012. These statements sufficiently show that Wayser "actually perceived or observed that which he testified to." Latman, 366 F.3d at 786.

In addition, although reasonable minds could differ, Wayser's testimony was sufficient to establish the accuracy and

-24-

trustworthiness of the billing statements for purposes of the business records exception to hearsay under Fed. R. Evid. 803(6).  See United States v. Bonallo, 858 F.2d 1427, 1435 (9th Cir. 1988) (The business records exception to hearsay under Fed. R. Evid. 803(6) is available where the record is "(1) made or based on information transmitted by a person with knowledge at or near the time of the transaction; (2) made in the ordinary course of business; and (3) trustworthy, with neither the source of information nor method or circumstances of preparation indicating a lack of trustworthiness.").

In sum, "[i]n non-jury cases, the [bankruptcy] judge is given great latitude in the admission or exclusion of evidence." Holliger v. United States, 651 F.2d 636, 640 (9th Cir. 1981). Accordingly, we discern no reversible error on the evidentiary grounds asserted by Appellants.

However, we agree with Appellants that the record is insufficient for us to conduct a meaningful review of the court's decision to award the amount of $20,000 in sanctions based on SACI's attorneys' fees.  In Padgett v. Loventhal, 706 F.3d 1205 (9th Cir. 2013), the Ninth Circuit recently reminded us that courts must show their work when calculating attorneys' fees.  See also Chalmers v. City of L.A., 796 F.2d 1205, 1213 (9th Cir. 1986), amended by 808 F.2d 1373 (9th Cir. 1987) (vacating fee award when the order contained no explanation of how the court arrived at the award).  That was not done by the bankruptcy court here.

Where monetary sanctions are awarded, "the amount of the monetary sanctions must be 'reasonable.'"  Leon v. IDX Sys.

Corp., 464 F.3d 951, 961 (9th Cir. 2006) (citing Brown v. Baden (In re Yagman), 796 F.2d 1165, 1184 (9th Cir. 1986), amended by 803 F.2d 1085 (1986)).

> When the sanctions award is based upon attorney's fees and related expenses, an essential part of determining the reasonableness of the award is inquiring  into the reasonableness of the claimed fees.  Recovery should never exceed those expenses and fees that were reasonably necessary to resist the offending action . . . the court must make some evaluation of the fee breakdown submitted by counsel.

In re Yagman, 796 F.2d at 1184.  The Ninth Circuit has held in other contexts that the lodestar approach is a proper method for determining the reasonableness of attorneys' fees.  Ballen v. City of Redmond, 466 F.3d 736, 745-46 (9th Cir. 2006) (characterizing the lodestar figure as the "presumptively accurate measure of reasonable fees" when calculating permissible fees under 42 U.S.C. § 1988); see also Gisbrecht v. Barnhart, 535 U.S. 789, 801 (2002) ("The 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.").  The starting point for computing the lodestar amount is to multiply the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.  Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028 (9th Cir. 2000).  The hourly rates used must be "in line with those prevailing in the community for services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886, 895 (1984).

Another factor for determining reasonableness is the sanctioned party's ability to pay.  In re Yagman, 796 F.2d at 1184; see also Haynes v. City and Cnty. of S.F., 688 F.3d 984,

-26-

987 (9th Cir. 2012) (awards under 28 U.S.C. § 1927 are discretionary such that the court may permissibly take ability to pay into account, although courts are not required to limit an award to the amount that the sanctioned attorney is able to pay); and White v. Gen. Motors Corp., Inc., 908 F.2d 675, 684-85 (10th Cir. 1990) (factors relevant to determine an appropriate amount of monetary sanctions include the reasonableness of the amount requested, the minimum necessary to deter a repetition of the conduct, and the ability to pay the sanction.).

Here, there is no indication in the record as to how the bankruptcy court calculated the $20,000 amount. The court does not state the number of hours that it found reasonable for the work performed nor does it set forth the hourly rate which it applied. See Tutor-Saliba Corp. v. City of Hailey, 452 F.3d 1055, 1065 (9th Cir. 2006) (vacating fee award when order failed to state, among other things, the number of hours being compensated or the hourly rate applied). The mandate that courts show their work is all the more important in cases where, as here, some of the entries have been redacted and Wayser's hourly rate appears to be far above the prevailing community rates even though discounted.[12] Finally, although attorney Bell argued that Smith had little ability to pay significant sanctions because Smith filed bankruptcy in 2009 and 2010, it is unclear whether the bankruptcy court took this factor into

---

[12] The record does not contain any competent evidence on what is a reasonable rate for the community.

consideration when determining the reasonableness of the fees.[13] See In re Yagman, 796 F.2d at 1184; Haynes, 688 F.3d at 987.

We also note that when a bankruptcy court imposes sanctions pursuant to its inherent power, the court "should limit sanctions to the opposing party's more 'direct' costs, that is, the costs of opposing the offending pleading or motion." Orange Blossom Ltd. P'ship v. S. Cal. Sunbelt Devs., Inc. (In re S. Cal. Sunbelt Devs., Inc.), 608 F.3d 456, 466 (9th Cir. 2010) (quoting Lockary v. Kayfetz, 974 F.2d 1166, 1178 (9th Cir. 1992)). Under this precedent, fees and expenses incurred for preparing and prosecuting the sanctions motions are generally not authorized.[14]

In sum, because the bankruptcy court did not "show its work," we vacate the sanctions orders and remand to allow the court to explain its reasoning on the reasonableness of the fees.

**B.    The Merits:  Cross-Appeals EC-12-1493 and EC-12-1498**

Because of our decision to vacate and remand, SACI's cross-appeals on the amount of the sanctions based on its attorneys' fees are rendered moot.  However, we still must address SACI's cross-appeals relating to the bankruptcy court's denial of sanctions in the amount of $101,435.00 based on the missing

---

[13] Besides Smith's two bankruptcies, we found no financial statements or other evidence in the record which demonstrated Smith's current financial condition.

[14] The bankruptcy court stated in its written rulings that its award was based on reasonable fees and costs incurred for, among other things, the motions for sanctions against West Coast, Smith and Brown.

-28-

rents.

SACI maintains that it would have received this amount in rent for the months of June, July and August 2012 (at the rate of $37,873 per month) had it been able to take possession of the property at the beginning of June 2012; as it would have without Appellants' bad faith acts. Because of Appellants' conduct, SACI contends that it was not able to foreclose until June 29, 2012, and, even then, it was unable to gain possession of the property until August 6, 2012, allegedly due to Smith's post-foreclosure conduct. SACI argues that due to the outrageousness of Appellants' conduct, the bankruptcy court abused its discretion by awarding a de minimis amount in sanctions which failed to make it whole or deter repeat conduct. We are not persuaded.

We mention first that generally a bankruptcy court has the inherent power to regulate the conduct of those before it, even in the absence of subject matter jurisdiction. Willy v. Coastal Corp., 503 U.S. 131, 137-38 (1992) (upholding Rule 11 sanctions before court of appeals determined district court lacked subject matter jurisdiction); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1336, at 632 (3d ed. 2005). Here, the bankruptcy court assumed it had subject matter jurisdiction to award SACI sanctions in the amount of the missing rents and, in the exercise of its discretion, denied SACI's request.

Reversal on abuse of discretion grounds is not proper unless we have "a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the

-29-

conclusion it reached after weighing the relevant factors." United States v. Gould (In re Gould), 401 B.R. 415, 429 (9th Cir. BAP 2009), aff'd on other grounds, 603 F.3d 1100 (9th Cir. 2010). By the same token though, "a bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings." Id.; TrafficSchool.com, Inc., 653 F.3d at 832.

In denying SACI's request for sanctions in the amount of the missing rents, the bankruptcy court considered the following factors: (1) SACI's claim for the missing rents against West Coast, Smith and Brown was essentially a "two party" dispute with little, or no, effect on West Coast's bankruptcy estate; (2) there were few, if any, remaining assets belonging to West Coast's estate after SACI obtained relief from stay; and (3) SACI could pursue its damage claim against Smith and Brown for the missing rents in the state court. After carefully weighing these factors, the bankruptcy court could reasonably conclude that SACI had not made a strong enough showing for the imposition of sanctions under the court's inherent power based on the amount of the missing rents.

SACI does not argue in its cross-appeals that the bankruptcy court's findings were illogical, implausible, or without support in the record. Indeed, the relationship between SACI's damage claim for the missing rents and SACI's direct costs in opposing the transfer of the property and West Coast's bad faith filing became tenuous at best after SACI foreclosed. In addition, although sanctions under § 105 serve the dual purposes of compensation and deterrence, we are not convinced

-30-

that SACI's citations to In re Simmons, 2011 WL 3957439, at *1 (Bankr. N.D. Cal. 2011), In re Avon Townhomes Venture, 433 B.R. at 304, or Rentz v. Dynasty Apparel Indus., Inc., 556 F.3d 389, 399-400 (6th Cir. 2009), compel a different result. These cases are factually distinguishable and simply reiterate the general premise that under certain circumstances an award in the full amount of the attorneys' fees incurred may be warranted to serve the dual purpose of deterrence and making the party which incurred the fees whole. None of these cases addresses an award of sanctions for missing rents under § 105 nor do they discuss any factors relevant to such an inquiry.

In sum, SACI has not convinced us that the bankruptcy court abused its discretion by basing its decision on an erroneous view of the law. Accordingly, we discern no error with the bankruptcy court's exercise of restraint and discretion not to impose sanctions in the amount of the missing rents under the facts and circumstances of this case.

## VI.  CONCLUSION

For the reasons stated, we VACATE the sanctions orders and REMAND on the amount of the sanctions based on SACI's attorneys' fees so that the bankruptcy court can show its work. We AFFIRM the denial of SACI's request for sanctions in the amount of the missing rents as within the bankruptcy court's broad discretion.